```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
```

ROBIN GUIDRY CURE and                          CIVIL ACTION
WALTER J. CURE, IV


VERSUS                                         NO. 06-5207


LOUISIANA FARM BUREAU                          SECTION "F"
CASUALTY INSURANCE CO.,
FARM BUREAU INSURANCE AGENCY
and CLIFTON WAYNE HUTTO


### ORDER AND REASONS

Before the Court are Louisiana Farm Bureau Casualty Insurance Company's motion for summary judgment and motion to strike the plaintiffs' demand for a jury trial. Also before the Court is the plaintiffs' motion for reconsideration, requesting the Court to vacate its November 29, 2007 order granting Clifton Wayne Hutto's motion for summary judgment. For the reasons that follow, Louisiana Farm Bureau's motion for summary judgment is GRANTED and its motion to strike is DENIED as moot. The plaintiffs' motion for reconsideration is DENIED.

### Background

Robin Guidry Cure and Walter J. Cure, IV own a home located at 2905 Acorn Drive in Violet, Louisiana. This dispute involves a

1

reduction of their property's flood policy limits that took place in 1999.

In 1993, the plaintiffs purchased a Standard Flood Insurance Policy ("SFIP") from Louisiana Farm Bureau in its capacity as a Write-Your-Own insurance provider under the National Flood Insurance Act, 42 U.S.C. § 4001. Under the Act, the director of FEMA is required to identify and map the nation's flood-prone areas and establish flood-risk zones. The maps are then used to determine the premiums and policy limits for flood insurance. When the plaintiffs initially purchased their policy, their home was determined to be in Flood Zone C, which is considered a low-risk zone. This allowed them to obtain a "Preferred Risk Policy" with coverage limits of $100,000 for the home and $25,000 for the contents. They renewed this policy annually with the same coverage from 1993 to 1999. At some point in 1999 the National Flood Insurance Program advised Louisiana Farm Bureau that the Cures' property was ineligible for a Preferred Risk Policy, because it was located in a "Special Flood Hazard Area." On August 9, 1999, Louisiana Farm Bureau notified the plaintiffs by letter that their property was now determined to be in Flood Zone A-2. The letter stated that:

> [Your] policy has been cancelled and rewritten as a Standard Flood Insurance Policy effective with the inception date of the current policy term.... You have the option of using the Standard Flood Insurance Policy rates for Flood Zone C or using the current rating criteria for Flood Zone A-2. The map 'Grandfather Rules' do not apply to the Preferred Risk Policy.

> Enclosed is your new Standard Flood Insurance Policy. Should you desire additional information, please contact your Farm Bureau agent or call our office at [the following number].

The plaintiffs admit they received this letter.[1] Under the new policy issued in August 1999, the coverage limits were reduced from the previous level to $29,200 for the home and $7,300 for the contents, and the premium remained approximately the same ($225 compared to $221 under the previous policy). The reduced coverage limits reflected the property's location in a flood hazard area. The declaration page of the policy indicated that the "Risk Zone" was "C." The plaintiffs renewed the policy on April 11, 2000 with the same coverage limits, on April 11, 2001, with increased coverage limits of $32,100 for the home and $8,000 for contents,

---

[1] The property was "grandfathered" because it was built before the implementation of the Flood Insurance Rating Map. Therefore, it remained eligible for Zone C premiums, but not the higher policy limits of a Preferred Risk Policy.
   According to the defendants, the plaintiffs benefitted from maintaining the Zone C rates, even though they were technically living in Zone A-2. The plaintiffs apparently disagree. Their entire case appears to be premised on the theory that they would have gotten more bang for the buck if they elected to pay premiums under a different Zone, and the only other Zone they qualified for was A-2. Their theory is based on the fact that one of their neighbors, who was zoned under A-1, paid marginally higher premiums for much higher coverage. But even assuming that the A-2 rates/coverage mix were favorable, Louisiana law imposes no duty on insurers to offer the best insurance coverage at the best price. As noted in Dobson v. All State Ins. Co., 2006 WL 2078423 *10 (E.D. La. 2006), an insurance agent is not obliged to identify a client's needs and advise him whether he is underinsured or carries the correct type of coverage. The plaintiffs were never denied coverage they requested, and were never provided coverage they did not qualify for.

and then again renewed it on April 11, 2002. On April 11, 2003, Mr. Cure signed an endorsement increasing the coverage limits to $37,000 for the home and $8,000 for contents. This policy, with the same limits, was renewed on April 11, 2004 and April 11, 2005. The declaration page on each policy clearly indicated the premium, the policy limits, and that the property's "Risk Zone" was "C." The property was damaged extensively on August 29, 2005 by Hurricane Katrina. The plaintiffs filed this lawsuit on August 28, 2006 against Louisiana Farm Bureau and Clifton Wayne Hutto, the insurance agent, seeking to have the coverage limits on their policy increased.

I.

Rule 56 of the Federal Rules of Civil Procedure instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted).

In evaluating the motion papers, and reading the facts in the light most favorable to the plaintiffs, see Anderson, 477 U.S. at 255, the Court concludes that Louisiana Farm Bureau is entitled to a judgment as a matter of law, as there are no disputed facts such that a reasonable jury could find for the plaintiffs.

To the extent the plaintiffs are seeking to increase their policy limits retrospectively, there is no basis for this claim. United States Treasury Funds are used to pay insurance claims under the NFIP, whether the actual policy is issued by FEMA or a WYO company such as Louisiana Farm Bureau. See Gowland v. Aetna, 143 F.3d 951, 955 (5th Cir. 1998). Because the government's financial interests are at stake, WYO companies are not permitted to alter any aspect of the Standard Flood Insurance Policy. 44 C.F.R. §§ 61.4(b), 61.13(d). FEMA regulations establish the terms of the SFIP, the rate structures, and premium costs. 42 U.S.C. § 4013. Furthermore, the terms of the SFIP promulgated by FEMA are strictly construed and enforced because claims under an SFIP directly affect the United States Treasury. Formal v. FEMA, 138 F.3d 543, 545 (5th Cir. 1998). No coverage can be afforded unless it is expressly provided for under the terms of the SFIP. See 44 C.F.R. § 61.5(e). Regarding reduction and reformation of coverage, the Standard Flood Insurance Policy states in VII.G.:

> 1. If the premium we received from you was not enough to buy the kind and amount of coverage you requested, we will provide only the amount of coverage that can be purchased for the

>    premium payment we received.
>
>    2. The policy can be reformed to increase the amount of coverage resulting from the reduction described in G.1. above to the amount you requested as follows:
>
>    ....
>
>    (b) Discovery of Insufficient Premium or Incomplete Rating Information After a Loss:
>
>    (1) If we discover after you have a flood loss that your premium payment was not enough to buy the requested amount of coverage, we will send you and any mortgagee or trustee known to us a bill for the required additional premium for the current and the prior policy terms. If you or the mortgagee or trustee pay the additional premium within 30 days of the date of our bill, we will reform the policy to increase the amount of coverage to the originally requested amount effective to the beginning of the prior policy term.
>
>    (2) If we discover after you have a flood loss that the rating information we have is incomplete and prevents us from calculating the additional premium, we will ask you to send the required information. You must submit the information before your claim can be paid. Once we determine the amount of additional premium for the current and prior policy terms, we will follow the procedure in G.2.b. (1) above.

44 C.F.R. Pt. 61, app. A(1), art. VII(G).

These terms are not ambiguous. See <u>Englande v. Bradshaw Ins. Agency</u>, 2007 WL 2461683 (E.D. La. 2007). The Reformation Provision stipulates that reformation after a flood loss can be granted if the premium paid was too low for the coverage requested. This is not alleged in this case, therefore retroactive reformation of the policy must be denied.

The plaintiffs claim that there was an "obvious ambiguity" between the designation of the policy as "Risk Zone C" and the

amount of coverage provided. Rogers v. Allstate Ins. Co., 2007 WL 1029480 (E.D. La. 2007) (ambiguities construed in favor of insured). Their position appears to be that the "Zone C" indication on the declarations page fooled them into ignoring the clearly-stated policy limits. Apart from the fact that the plaintiffs admit receiving the August 9, 1999 letter notifying them of the new coverage limitations (as well as the 1999 policy declaration page that stated: "IMPORTANT! COVERAGES LESS THAN REQUESTED"), the truth is it makes no difference what Zone they thought they were in. The plaintiffs don't claim that they were eligible for a Preferred Risk Policy (because they were not), and they don't claim they *weren't* eligible to pay Zone C premiums. And finally, under the facts, there would be no cause to reform their coverage even if they *had* been eligible for a Preferred Risk Policy. In Englande v. Bradshaw Ins. Agency, homeowners in Zone A (a flood hazard zone) purchased a flood policy. After their home was destroyed by Katrina, they learned it had actually been in Zone B, and qualified for a Preferred Risk Policy at cheaper rates than they were paying. 2007 WL 2461683 *5 (E.D. La. 2007). The court held that there was no cause for reformation under the terms of the SFIP. Id. The same is true here. Louisiana Farm Bureau's motion for summary judgment is granted, and its motion to strike the plaintiffs' demand for a jury trial is denied as moot.

II.

Although the Federal Rules of Civil Procedure do not recognize a motion for reconsideration, the Fifth Circuit has held that such motions, if filed within ten days after entry of judgment, must be treated as motions to alter or amend under Rule 59(e). Lavespere v. Niagara Machine & Tool Works, Inc., 910 F.2d 167, 173 (5th Cir. 1990), abrogated on other grounds by Little v. Liquid Air Corp., 37 F.3d 1069, 1075, n. 14 (5th Cir. 1994) (*en banc*). The plaintiffs filed the motion for reconsideration within ten days of entry of the Court's judgement.  Therefore, the Court treats it as a motion under Federal Rule of Civil Procedure 59(e). U.S. v. One Dodge Pickup, 959 F.2d 37 (5th Cir. 1992) (motion that calls into question the correctness of the court's ruling is treated as a motion under Rule 59(e)).

Because of the interest in finality, motions for reconsideration may be granted only if the moving party shows there was a mistake of law or fact or presents newly discovered evidence that could not have been discovered previously. Templet v. Hydrochem, Inc., 367 F.3d 473, 478-79 (5th Cir. 2004). On November 20, 2007, the defendant Clifton Wayne Hutto filed a motion for summary judgment, arguing that the plaintiffs' claims had been preempted because they had not been brought within one year "from the date the alleged omission or neglect is discovered or should have been discovered," or, in any event, "within three years of the

8

alleged act." La. Rev. Stat. 9:5606. Under the statute, both the one year and three year periods are preemptive, not prescriptive, and cannot be tolled or suspended. In reviewing Hutto's motion for summary judgment, the Court considered all the facts and the applicable law, and, it appearing to the Court that the motion had merit, the motion was granted as unopposed. Now, having also considered the arguments in the plaintiffs' opposition, the Court's initial judgment is confirmed. To the extent that the plaintiffs were injured, that injury occurred (at the latest) the last time the policy was altered, in April 2003, and the cause of action would have been preempted, at the latest, in April 2006. The plaintiffs did not file suit until August 28, 2006.[2] Renewing their policy annually did not restart the preemption period. See Bel v. State Farm Mutual Automobile Insurance Co., 845 So.2d 377, 380 (La. App. 1st Cir. 2003); Wirth v. Allstate Insurance Co., 2007 WL 2436695 *4-5 (E.D. La. 2007). Because the plaintiffs have not established that there was a mistake of law or fact or presented new evidence, their motion for reconsideration is denied.

Accordingly, IT IS ORDERED that Louisiana Farm Bureau's motion for summary judgment is granted, and its motion to strike the

---

[2] The claim is preempted whether the three-year period starts from when the policy limits were originally (and, according to the plaintiffs, wrongfully) reduced in August 1999, or when the policy was last altered in April 2003.

plaintiffs' demand for a trial by jury is DENIED as moot. The plaintiffs' motion for reconsideration is DENIED. The case is dismissed.

New Orleans, Louisiana, December 20, 2007.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE